UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| TAMEKA EDWARDS,<br><br>   Plaintiff,<br><br>   v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>   Defendant. | Case No. CV 16-07895-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Tameka Edwards ("Plaintiff") appeals from the Social Security Commissioner's final decision denying her applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons discussed below, the Commissioner's decision is affirmed and this matter is dismissed with prejudice.

///

///

///

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Social Security Commissioner. Thus, she is automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).

# I.
# BACKGROUND

Plaintiff filed applications for DIB and SSI alleging disability beginning on August 5, 2011. See Administrative Record ("AR") 19, 195-205. Plaintiff's claims were denied, as was her request for reconsideration. See AR 120-23, 130-31, 132-36. Plaintiff then requested a hearing before an administrative law judge ("ALJ"). See AR 141-43. The ALJ conducted two hearings: an initial hearing on November 13, 2014, and a supplemental hearing on May 11, 2015. See AR 32-62. At both hearings, the ALJ heard testimony from a vocational expert ("VE") and Plaintiff, who was represented by counsel. See id.

On June 5, 2015, the ALJ issued a written decision denying Plaintiff's claims for benefits. See AR 16-27. Despite finding that Plaintiff had the severe impairments of back disorder, osteoarthritis and dysfunction of the knees, and obesity, see AR 21, the ALJ determined that her impairments did not equal the severity of a listed impairment, see AR 24. She also found that Plaintiff retained the residual functional capacity ("RFC") to perform the demands of sedentary work with the following limitations:

> [Plaintiff] can lift up to 10 pounds frequently and occasionally. She can stand, walk, and sit up to 6 hours at one time and up to 6 hours in an 8-hour day. She can walk up to one mile without a cane, and she otherwise requires a cane for ambulation. She can continuously reach in all directions (including overhead), handle, finger, and feel. She can occasionally push, pull, balance, stoop, kneel, crouch, crawl, be exposed to unprotected heights, and climb ladders, ropes, scaffolds, and stairs. She is also limited to frequent exposure to moving mechanical parts and operating of a motor vehicle.

Id.

In reaching this conclusion, the ALJ determined that Plaintiff's testimony and other statements about the extent of her limitations were "not entirely credible." AR 16. Based on Plaintiff's age, education, and work experience and the VE's testimony that Plaintiff could perform her past work as a receptionist, the ALJ concluded that a finding of "not disabled" was warranted. AR 26-27.

On August 23, 2016, the Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-3; see also 20 C.F.R. §§ 404.981, 416.1481. Plaintiff sought judicial review in this Court. See Dkt. 1.

## III.
## DISCUSSION

The parties dispute whether the ALJ properly considered Plaintiff's testimony. See Joint Submission (Dkt. 24) ("JS") at 4.

### A. Applicable Law

The court engages in a two-step analysis to review the ALJ's evaluation of Plaintiff's symptom testimony. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Id. If the claimant satisfies this first step, and there is no evidence of malingering,[2] the ALJ can

---

[2] It is an open question within the Ninth Circuit whether the ALJ must make a specific finding of "malingering" or whether a "lesser standard" of "mere evidence of malingering" in the record is sufficient to avert application of the clear and convincing standard. Ghanim v. Colvin, 763 F.3d 1154, 1163 n.9 (9th Cir. 2014). While some evidence of malingering exists in the record, the ALJ did not make a specific finding, but rather noted that Plaintiff may have exaggerated her limitations. "Accordingly, this Court will err on the side of caution and apply the clear and convincing standard to the ALJ's credibility

3

reject the claimant's testimony about the severity of symptoms only by offering specific, clear and convincing reasons for doing so. Id.

Plaintiff argues that the Court should apply Social Security Ruling ("SSR") 16-3p to the ALJ's decision. See JS at 6. SSR 16-3p eliminates the term "credibility" from SSA policy and states that the "focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p took effect on March 16, 2016. The Ninth Circuit recently suggested that SSR 16-3p is consistent with Ninth Circuit case law predating that SSR. See Trevizo, 871 F.3d at 678 n.5 (noting that SSR 16-3p "makes clear what our precedent already required," i.e., that the ALJ is "not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness," but rather focus on "evaluat[ing] the intensity and persistence of [the alleged] symptoms").

**B.  Analysis**

Plaintiff contends that the ALJ erroneously rejected Plaintiff's pain and symptom testimony without articulating specific, clear and convincing reasons for her decision. See JS at 5-6. The Court disagrees.

First, after thorough review of Plaintiff's medical record, the ALJ concluded that the record did not support limitations greater than those she imposed in her RFC finding. See AR 24-25. The ALJ noted that the opinions of Dr. Brown, Dr. Rosenzweig, and Dr. Wellisch all included limitations "consistent with a sedentary range of work." AR 26. For example, "Dr. Brown opined that [Plaintiff] was capable of lifting and carrying up to 30-50 pounds, . . . was limited to standing, walking, and driving up to 4 hours in an 8-hour day." Id. Similarly, Dr. Wellisch's determination that Plaintiff "is capable of a

---

determination." Escobar v. Colvin, No. 14-02741, 2016 WL 354416, at *12 n.2 (S.D. Cal. Jan. 4, 2016).

4

limited range of sedentary exertion . . . accounts for [Plaintiff's] reports of difficulties with postural activities, standing, sitting, walking unassisted for extended periods." Id.

By giving thorough consideration to all of Plaintiff's physicians and the manageable symptoms that they reported, the ALJ demonstrated that the objective medical evidence did not corroborate Plaintiff's symptom testimony. Moreover, she adequately accounted for Plaintiff's knee and back pain allowing for only a limited range of sedentary work. The ALJ's finding that the record lacked objective medical evidence was a proper basis for discounting Plaintiff's symptom testimony. See Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001) (holding that the ALJ permissibly discredited the claimant's subjective complaints where the objective evidence did not corroborate the severity of the alleged symptoms). And while an ALJ may not discredit pain testimony merely because the reported degree of pain is unsupported by objective medical findings, the ALJ provided additional valid reasons for discounting Plaintiff's complaints of disabling pain, including the conservative treatments prescribed and Plaintiff's failure to exert full effort during an examination. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Plaintiff argues that the ALJ erred when she did not consider the drowsiness caused by Plaintiff's pain medication. See JS at 8. At the hearing, Plaintiff testified that she takes pain medication three times per day, and after each dose she has to take a nap for three hours. See AR 39-40. However, the ALJ noted that the "[t]reating records do not document [Plaintiff's] alleged significant sleepiness from her medications. There is only evidence that [Plaintiff] reported experiencing an upset stomach associated with Vicodin,

and healthcare providers therefore discontinued [Plaintiff's] Vicodin use." AR 26. While Plaintiff noted drowsiness due to medication in her pain questionnaire form and during the hearing, the record does not show that she reported this side effect to her physicians so that they could adjust treatment accordingly. See AR 39-40, 221. In contrast, Plaintiff reported an upset stomach due to her pain medication, suggesting that she knew that she should tell her physicians about problems with her medication. See AR 439. Moreover, while Plaintiff told her physicians about problems with sleep, those problems related to her inability to fall asleep due to pain rather than drowsiness due to her pain medications. See, e.g., AR 315 ("Her low back pain does help to awaken her from sleep at times. . . . Her knee pain often awakens her from sleep. . . . She has difficulty with sleep."); AR 632 ("[Plaintiff] states that it takes her 4 hours to fall asleep. . . . She estimates that she sleeps a total of 6 hours per night."). Because Plaintiff did not report drowsiness to her physicians, the ALJ validly discounted Plaintiff's drowsiness testimony as inconsistent with the record. See Light v. Comm'r of Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.), as amended (1997) (in weighing plaintiff's credibility, ALJ may consider "inconsistencies either in [plaintiff's] testimony or between his testimony and his conduct").

Second, the ALJ cited Plaintiff's history of limited treatment as a basis for discounting her symptom testimony. See AR 25-26. The ALJ noted: (1) that Plaintiff's physician "recommended conservative treatment [on October 11, 2011,] consisting of Tramadol, topical analgesics, physical therapy, and chiropractic treatment," AR 25; see AR 566-69; (2) that Plaintiff's "overall musculoskeletal pain responded to conservative treatment both before and after" her 2012 right knee surgery, AR 25; (3) that her physician "recommended conservative treatment for [Plaintiff's] knee impairments in early 2013 [that] . . . consisted of medications, home exercise, and aquatic

therapy," and that Plaintiff had found the aquatic therapy helpful and "was not interested in another right knee surgery," AR 25; and (4) that "there is no indication that [Plaintiff] has sought regular medical treatment since January 2014, which suggests that [Plaintiff's] pain has not been severe enough to compel her to seek such treatment," AR 26. All of these reasons are supported by substantial evidence in the record and are clear and convincing reasons to discount Plaintiff's symptom testimony. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that ALJ may infer that claimant's "response to conservative treatment undermines [claimant's] reports"); see also Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (finding that the claimant's allegations of persistent, severe pain and discomfort were belied by "minimal conservative treatment").

Plaintiff argues that when the ALJ considered that Plaintiff had not sought regular treatment since January 2014, she impermissibly failed to account for Plaintiff's lack of insurance. See JS at 9. At the hearing on November 13, 2014, Plaintiff noted that her insurance through workers' compensation ended in approximately January 2014 and that she enrolled in Medi-Cal at some time after that. See AR 59. Her attorney cited this as the reason why she had not received treatment for several months. See id. But at the supplemental hearing on May 11, 2015, Plaintiff indicated that she resumed treatment only two or three weeks earlier. See AR 43-45, 47. While the temporary gap in insurance may have excused Plaintiff's failure to seek treatment for several months, the ALJ validly considered Plaintiff's failure to seek treatment for several months after obtaining Medi-Cal. Given the severity of pain Plaintiff described at her hearing, it was reasonable for the ALJ to conclude that Plaintiff had decided not to seek pain-reducing treatment even after receiving insurance because the pain was not as debilitating as she stated during the hearing.

Third, as another reason for discounting Plaintiff's symptom testimony, the ALJ observed that Plaintiff "might exaggerate her limitations at times," specifically pointing to the fact that "AME Dr. Brown noted that [Plaintiff] was not exerting full effort on range of motion testing of the knees." AR 26. Dr. Brown concluded that there were largely "unremarkable" findings in Plaintiff's spine and left knee, with "pain and crepitus" in her right knee indicative of patellar chrondromalacia. In so concluding, Dr. Brown observed that Plaintiff's effort was not "medically reasonable" given her clinical findings or MRI scan findings. AR 321. Dr. Brown also noted that Plaintiff had not sought treatment after her injury. Id.

Dr. Brown cited specific reasons for believing that Plaintiff was not being fully honest about the severity of her pain and explained how her complaints conflicted with the objective medical findings. An ALJ may consider evidence that a plaintiff is exaggerating symptoms when making a credibility determination. See Williamson v. Comm'r of Soc. Sec., 438 F. App'x 609, 611 (9th Cir. 2011) (holding that it was proper for ALJ to discount claimant's testimony based on a doctor's observation that there was reason to suspect that claimant had exaggerated symptoms); Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (holding that a claimant's exaggeration is a specific and convincing reason to discount the claimant's credibility). And while Plaintiff argues that the ALJ erred in using a single doctor's suspicions to find exaggeration, Plaintiff cites no relevant authority for this claim. See JS at 9-10.

On appellate review, the Court does not reweigh the hearing evidence regarding Plaintiff's credibility. Rather, this Court is limited to determining whether the ALJ properly identified clear and convincing reasons for discrediting Plaintiff's credibility, which the ALJ did in this case. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). It is the ALJ's responsibility to determine credibility and resolve conflicts or ambiguities in the evidence. See

Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). If the ALJ's findings are supported by substantial evidence, as here, this Court may not engage in second-guessing. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002); Fair, 885 F.2d at 604. It was reasonable for the ALJ to rely on all of the reasons stated above, each of which is supported by substantial evidence, in rejecting Plaintiff's subjective complaints. Reversal is therefore not warranted on this basis.

## IV.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: March 01, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge